*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AUTO-OWNERS INSURANCE COMPANY,

        Plaintiff-Appellant,

v

JROC INC, doing business as SAND BAR GRILLE,
SHM TOLEDO BEACH LLC, SAFE HARBOR
MARINAS LLC, and ESTATE OF JILL
PARRINELLO,

        Defendants-Appellees,

and

TOLEDO BEACH DOCKOMINIUM ASN,

        Defendant.

UNPUBLISHED
September 12, 2024

No. 369309
Monroe Circuit Court
LC No. 2022-145487-CK

Before: K. F. KELLY, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

In this declaratory judgment action, plaintiff, Auto-Owners, appeals as of right the trial court order granting summary disposition to defendants Safe Harbor Marinas, LLC and SHM Toledo Beach, LLC under MCR 2.116(C)(10). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

On August 16, 2019, after 11:00 p.m., Jill Parrinello and Darrin Gabbard arrived at the Sand Bar Grille, which is located on the premises of the Safe Harbor Marina in LaSalle, Michigan. The two sat at the bar and were served 2-3 beers each. They left a little after 1:00 a.m. Thereafter, they both went missing. Approximately one week after their disappearance, the police discovered Parrinello's vehicle at the bottom of the waterway channel. Parrinello and Gabbard, both of whom had been trapped in the vehicle after it entered the water, were pronounced dead at the scene.

-1-

Parrinello's estate filed a premises liability claim against JROC, Inc, doing business as the Sand Bar Grille, SHM Toledo Beach LLC, and Safe Harbor Marinas LLC. Thereafter, defendants SHM Toledo Beach LLC and Safe Harbor Marinas (collectively the Marina defendants) filed a cross claim against JROC, alleging breach of a commercial lease agreement and seeking indemnification for any damages arising from the failure to comply with the terms of the lease agreement. As relevant to the issues raised in this appeal, Auto-Owners, JROC's insurer, filed a complaint for declaratory judgment, seeking a declaration that the Marina defendants were not covered by the insurance policy that it had issued to JROC. Following discovery, the Marina defendants moved for summary disposition under MCR 2.116(C)(10), alleging that they qualified as additional insureds under JROC's policy because Parrinello's death arose out of the use of the portion of the premises leased to JROC given that Parrinello's sole purpose for being at the marina was to patronize the Sand Bar Grille. Auto-Owners argued in response that the Marina defendants were not additional insureds because the underlying litigation did not relate to the ownership, maintenance, or use of any part of the premises that had been leased to JROC. And given the lack of additional insured status, Auto-Owners requested that the trial court grant it summary disposition against the Marina defendants. Following oral argument on the motions, the trial court entered an order granting summary disposition to the Marina defendants. This appeal follows.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Auto-Owners argues that the trial court erred by granting summary disposition to Safe Harbor Marinas and SHM Toledo Beach under MCR 2.116(C)(10) and by denying its motion for summary disposition under MCR 2.116(I)(2). We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Summary disposition under MCR 2.116(C)(10) is warranted "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 461; 646 NW2d 455 (2002). When reviewing the motion, the trial court considers "the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Questions of statutory interpretation are reviewed do novo. *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 443; 889 NW2d 759 (2016). Likewise, this Court reviews de novo questions regarding the interpretation of an insurance policy. *DeFrain v State Farm Auto Ins Co*, 491 Mich 359, 366-367; 817 NW2d 504 (2012).

## B. ANALYSIS

Resolution of the issue raised on appeal requires consideration of the interplay between JROC's insurance policy that was issued by Auto-Owners and the commercial lease agreement that JROC entered into with the Marina defendants. Under the terms of the lease, JROC was required to name the Marina defendants as additional insureds. The tailored protection insurance policy issued to JROC listed only JROC as a named insured. However, in the commercial general liability plus coverage endorsement, the policy provided:

**9. BLANKET ADDITIONAL INSURED—MANAGERS OR LESSORS OR PREMISES**

**a. SECTION II—WHO IS AN INSURED** is amended to include as an additional insured any person or organization with who you have agreed:

(1) In a written contract or agreement, executed prior to loss, to name as an additional insured . . . but only with respect to liability arising out of the ownership, maintenance, or use of that part of the premises leased to you.

As relevant to the issue raised on appeal, coverage under the insurance policy exists for "bodily injury" caused by an "occurrence" that occurs in the coverage territory and during the policy period. "Bodily injury" is defined to include death and "occurrence" is defined to include "an accident." Thus, it is clear that Parrinello's death as a result of becoming trapped in a submerged vehicle is a bodily injury caused by an occurrence, as those terms are defined by the insurance policy. The question, therefore, is whether the Marina defendants are afforded coverage as additional insureds under Section 9(a)(1) of the commercial general liability plus coverage endorsement to the insurance policy.

When interpreting an insurance contract, this Court must "determine what the agreement was and effectuate the intent of the parties." *Hunt v Drielick*, 496 Mich 366, 372–373; 852 NW2d 562 (2014). The policy must be construed "so as to give effect to every word, clause and phrase . . . ." *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005). The policy must be read as a whole, and the terms of the policy must be "accorded their plain and ordinary meaning." *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 292; 778 NW2d 275 (2009). Here, the Marina defendants entered into a written lease agreement with JROC and, under the terms of that agreement, JROC was required to name the Marina defendants as additional insureds. Therefore, the first requirement of Section 9(a)(1) of the commercial general liability plus coverage endorsement to the insurance policy is satisfied. The dispute instead turns on whether there is "liability arising out of the . . . use of that part of the premises leased to" JROC.

As recognized by Auto-Owners on appeal, the phrase "arising out of" as used in insurance contracts has "a broad, comprehensive, and general meaning synonymous with the phrase 'grows out of,' as well as the phrases 'originating from,' 'having its origin in,' or 'flowing from.' " *People v Warren*, 462 Mich 415, 428 n 23; 615 NW2d 691 (2000) (citations omitted). Moreover, the Marina defendants point out that:

Insurance policies often employ such language as "arising out of" and "resulting from" relative to describing the coverage provided by the policy. These phrases are frequently given a broader and more comprehensive meaning than that encompassed by proximate cause. The phrases are generally considered to mean "flowing from" or "having its origin in." Accordingly, use of these phrases does not require a direct proximate causal connection but instead merely requires some causal relation or connection. [Couch on Insurance, 3d ed, § 101:52]

See also *Thornton v Allstate Ins Co*, 425 Mich. 643, 659, 391 N.W.2d 320 (1986) (holding that an injury arises out of the use of a motor vehicle as a motor vehicle "where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or 'but for' "). Based upon the foregoing, we conclude that, as used in the insurance policy at issue in this case, the phrase "liability arising out of the . . . use of that portion of the premises leased to" JROC, requires a causal connection between Parrinello's death and the use of the Sand Bar Grille that is more than incidental, fortuitous, or "but for."

Auto-Owners argues that there is only an incidental, "but for" causal connection between Parrinello's use of the bar and her death. That is, but for her decision to patronize the Sand Bar Grille, she would not have died when leaving the parking lot. In support, Auto-Owners directs this Court to *Continental Ins Co v May Dep't Stores Co*, 138 F Appx 763 (CA 6, 2005). The decisions of lower federal courts are not binding, but they may be considered persuasive. *Abela v Gen Motors Corp*, 469 Mich 603, 606–607; 677 NW2d 325 (2004). We do not find *Continental Ins Co* to be persuasive. In that case, the Sixth Circuit Court of Appeals addressed whether a death that occurred in a parking lot covered by an insurance policy that provided coverage only for areas owned by the department store. *Continental Ins Co*, 138 F Appx at 764-765. The Court concluded that, because the parking lot where the death occurred was not owned by the department store, the death did not arise out of the ownership of an area that was leased to the department store. *Id*. at 765-766, 768. The *May* Court did not consider, however, whether the death arose out of the use of the building that was leased to the department store. See generally, *id*. Accordingly, it is not instructive as to the resolution of the issue raised in this appeal.

Regardless, Auto-Owners asserts that the Marina defendants can show nothing more than an incidental connection between the operation of the Sand Bar Grille and Parrinello's death. In support, it notes that the reason why the vehicle was driven off the boat launch and into the water was unclear; that there is no evidence as to how much time passed between Parrinello and Gabbard leaving the bar and when the vehicle was driven off the boat launch; and that what they did in the time between their departure and when the vehicle entered the water is, likewise, unknown. Indeed, it contends that the Marina defendants only speculate as to the reason why Parrinello was at the marina. Speculation is "an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference." *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994) (quotation marks and citation omitted).

The record reflects that Parrinello arrived after 11:00 p.m. on August 16, 2019, and was at the bar until sometime after 1:00 a.m. on August 17, 2019. During that time, she drank beer and sat at the bar. The Marina was not open to the public during that timeframe, and Parrinello was not one of the Marina's tenants. Indeed, the general manager for SHM Toledo testified that, at the time that Parrinello's phone was "pinging" in the area of the Marina, the only purpose for her being on the premises would be to patronize the Sand Bar Grille. Moreover, the record reflects that it is likely that there was a gate attendant, who would have required Parrinello to state that she was going to the Sand Bar Grille before she was admitted into the parking area. Based upon the foregoing, the Marina defendants presented more than mere speculation in support of their contention that Parrinello's sole purpose for being at the Marina was to patronize the Sand Bar Grille. Auto-Owners did not come forward with any evidence to refute that evidence. Thus, there was no genuine issue of material fact with respect to Parrinello's purpose for being at the marina. And, given that her sole purpose for being at the Marina was to patronize the Sand Bar Grille, the

Marina defendants have shown that there is a sufficient causal nexus between her death and her use of the bar.

Next, Auto-Owners suggests that the phrase "arising out of . . . the use of that portion of the premises leased to" JROC limits liability to incidents that occur in the interior portion of the building that was leased to JROC. In support, it notes that the commercial lease defines the leased premises as "[a]pproximately 3,000 square feet comprised of 11840 Toledo Beach Road (the "Building"). The floor plan of the Premises is shown on the attached Exhibit A." Further, the lease also provided that "[u]nless otherwise expressly granted by another provision of this Lease," JROC "shall have no right to access or make use of any space beyond the interior of the Premises, including the exterior walls or roof of any structure in the Marina." Yet, the lease also expressly provided that JROC and its guests, visitors, and business invitees shall only have a "non-exclusive, revocable license AT THEIR OWN RISK" to use the common areas, which were described as "the shared access, parking areas, and driveways serving the Marina." Accordingly, the leased portion of the premises expressly permitted both JROC's employees and patrons to *use* the marina's parking lot. Moreover, the lease also provided that the leased premises could be *used* for both the specified purpose of the operation of a bar and restaurant and for "any uses incidental" to that use. Considering the plain terms of the commercial lease, it is clear that the use of the leased portion of the premises is not limited solely to the use of the interior portion of the premises. Rather, it encompasses uses that are incidental to the operation of the bar and the restaurant, including the use of the parking lot by the bar's patrons. As a result, we conclude that § 9(A)(1) of the commercial general liability plus coverage endorsement does not preclude coverage simply because Parrinello's death occurred outside of the leased building.

In conclusion, there was a sufficient causal connection between Parrinello's death and her use of the Sand Bar Grille. Additionally, considering the language of the insurance policy and the commercial lease, it is clear that the Marina defendants are additional insureds because JROC entered into a written lease that required JROC to name them as additional insureds and because Parrinello's death arose out of her use of the part of the premises that were leased to JROC. The trial court, therefore, did not err by granting summary disposition to JROC and denying Auto-Owners' motion for summary disposition.

Affirmed. The Marina defendants may tax costs as the prevailing parties. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly

-5-